SHELDON-SEATZ, INC., *v.* COLES.

1. CONTRACTS—INTENT OF UNAMBIGUOUS WORDS.

In construing a contract in which the words used are not ambiguous or uncertain, the court must look for the intent of the parties in the words used in the instrument.

2. SAME—INTENT—SUPREME COURT.

The Supreme Court does not have the right to make a different contract for parties or to look to extrinsic testimony to determine their intent when the words used by the parties are clear, unambiguous and have a definite meaning.

3. SAME—TERMS.

Execution of agreement, entitled ''order and shipping schedule,'' which ordered a stated quantity of described merchandise, set forth the amount to be delivered during a four-month period, method of shipment and terms and which was required of jobber in order to get a distributor's sales agreement for territory *held*, to have resulted in a binding contract, notwithstanding omission of unit price, where such price was otherwise clearly determined, subject to approval under the Federal emergency price control act (50 USCA App. § 901 *et seq.*).

4. SAME—PUBLIC POLICY—PRICE CONTROL.

Contract to sell an article at a given price, subject to approval by the office of price administration, is not violative of the Federal emergency price control act, but, on the contrary, evidences an intent to abide by it (50 USCA App. § 901 *et seq.*).

5. SAME—CEILING PRICE SET AT LESS THAN COST OF MANUFACTURE —PERFORMANCE.

While the fact that the office of price administration established a ceiling price at less than cost of manufacture might render delivery of merchandise costly to defendant manufacturer, it does not render it impossible, and hence would not excuse performance under clause releasing defendant from liability

in case of nonperformance due to acts of God or causes not within the control of defendants (5 USCA App. § 901 *et seq.*).

6. SAME—REFUSAL OF PERFORMANCE—DAMAGES.

Where plaintiff distributor had taken sample orders from dealers for products which, if satisfactory to dealers, would result in sales of upwards of six times quantity ordered, plaintiff's expenditures in developing their territory and taking orders for the product were recoverable when defendant manufacturer refused performance that was possible even though at a loss.

7. DAMAGES—BREACH OF CONTRACT—EVIDENCE.

In suit to enjoin sale of defendants' toys in territory allotted to plaintiff under distributor's sales agreement, record *held*, to support finding that plaintiff suffered damages in the amount of $10,000 because of defendants' breach of contract.

8. CONTRACTS — TERMINATION — INJUNCTION — DISTRIBUTOR'S SALES AGREEMENT.

Where manufacturer terminated distributor's sales agreement by giving 90 days' notice, pursuant to express provision to that effect, it was error for court to permanently restrain the manufacturer from selling product covered by the agreement in the territory allotted to distributor thereunder.

9. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ON APPEAL.

No costs are allowed either party where neither has fully prevailed on appeal.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 10, 1947. (Docket No. 56, Calendar No. 43,857.) Decided December 3, 1947.

Bill by Sheldon-Seatz, Inc., a Minnesota corporation, and another against Kenneth Coles and others, doing business as Coaster Craft Company, and others for an injunction, accounting, appointment of receiver and money damages. Decree for plaintiff. Defendants appeal. Modified and affirmed.

*George H. Heideman* and *George O. Hansen,* for plaintiffs.

*Peck & Kramer,* for defendants.

DETHMERS, J.   Defendant Coaster Craft Company has an exclusive license from the patent owner to manufacture and sell a vehicle known as a Scooter Bike; it also has an arrangement with the manufacturer to handle the sale of another child's vehicle known as the Irish Mail.

On August 24, 1945, said defendant and plaintiff corporation executed an instrument designated in the record as exhibit 23, reading as follows:

"Order and Shipping Schedule
"COASTER CRAFT COMPANY
"2366 National Bank Building
"Detroit 26, Michigan
                    "Date     August 24, 1945
                    "Purchase Order

"Name     Sheldon-Seats, Inc.
"City   Minneapolis     State     Minn.
"Ship to          Same
          "VIA     Truck     F.O.B.     Detroit, Mich.
          "Terms     Sight Draft

| "Quantity | Model | Description | Month Sept. | Month Oct. | Month Nov. | Month Dec. | Unit Price | Total |
|-----------|-------|-------------|-------------|------------|------------|------------|------------|-------|
| "18,000 | VJ 100 | Irish Mail | 2000 | 5000 | 8000 | 3000 | .... | .... |
| "18,000 | .... | Scooter Bike | 2000 | 5000 | 8000 | 3000 | .... | .... |

                    "SHELDON-SEATS, INC.
                    ·Signed
                    "ELDRIDGE O. SHELDON
                    "District Sales Manager
                    "BRUCE S. WATTERWORTH."

Some time after September 30, 1945, the plaintiff corporation, of which plaintiff Sheldon is president, and defendant Coaster Craft Company executed a distributor's sales agreement whereby said defendant constituted plaintiff corporation its distributor for several midwestern states.   The agreement contained the following provisions:

## "Orders

"In order to facilitate the orderly scheduling of production and shipments, from week to week, distributor agrees to submit each week, his orders for additional merchandise. No merchandise will be shipped to distributor without his written order which shall be subject to acceptance and approval by Coaster Craft at its home office.

"Coaster Craft shall not be liable for loss or damage sustained by distributor in consequence of the failure or delay in deliveries where such failure or delay arises from or is due to Acts of God, fire, strikes, differences with workmen, lockouts, or other industrial disturbances, wars, blockades, insurrections, riots, explosions, accidents to machinery or failure of usual sources of supply of materials used in the manufacture of the products covered by this contract, or for any other cause not within the control of Coaster Craft."

## "Termination by Notice

"In the event that either party hereto desires to terminate this agreement for reasons other than above set forth, it is agreed that the same may be accomplished at any time upon not less than 90 days' nor more than 95 days' notice in writing by Coaster Craft."

Both vehicles were subject to price control by the office of price administration but no OPA ceiling price had been established thereon at the time exhibit 23 was executed. Plaintiff Sheldon testified, however, that during the negotiations leading to the distributor's sales agreement he had been led to believe by the defendants that a ceiling price of $9 on both vehicles had been established by the Detroit office of price administration, subject only to the formality of its approval by the regional office in Cleveland, Toledo or Cincinnati; that after negotia-

tions had been concluded plaintiffs, in reliance thereon, proceeded, as required by the agreement, to organize and build up a distributorship and to take orders for both vehicles in the allotted territory, expending in excess of $20,000 in that connection.

On September 21, 1945, an OPA ceiling price was established on the Irish Mail, after which a considerable volume of business was handled between the parties in relation to that product.

On December 7, 1945, an OPA ceiling price of $6.22, each, to jobbers was established on the Scooter Bike. Defendants failed to communicate this fact to plaintiffs until March 5, 1946, when defendants wrote plaintiffs that it would be impossible for defendants to sell Scooter Bikes through distributors due to the OPA ceiling price as established.

On February 7, 1946, defendants advised plaintiffs that the manufacturer of the Irish Mail had increased his price thereof so that the price to plaintiffs would exceed the OPA ceiling and that, therefore, no further shipments would be made.

Plaintiffs filed their bill of complaint praying that defendants be enjoined from selling Scooter Bikes to others than plaintiffs in the latters' territory and for damages resulting from the breach by defendants of their agreement as relates to Scooter Bikes.

A decree was entered in the trial court restraining defendants in the manner prayed for in plaintiffs' bill of complaint and awarding damages to plaintiffs in the sum of $10,000 to compensate plaintiffs for loss of profits and for moneys expended in developing their distributorship territory. Defendants appeal.

The controversy resolves itself primarily into a question of whether exhibit 23 amounted to an order by plaintiffs and acceptance of such order by de-

fendants for 18,000 Scooter Bikes and, if so, at what price.

Defendants claim that exhibit 23 was not intended by the parties to be a purchase order and acceptance, but merely an estimate of the sales potential of the allotted territory. Defendants stress the fact that the distributor's sales agreement, subsequently executed, provided that orders from the plaintiffs were to be forwarded to defendants weekly and be subject to the latters' approval. Plaintiff Sheldon testified, however, that the defendants made his placing an order for 18,000 of each of the vehicles a condition precedent to executing the distributor's sales agreement. The testimony of defendant Watterworth, although referring to exhibit 23 as a sales potential, tends to corroborate plaintiff Sheldon in this connection. Watterworth testified as follows:

"Our practice in establishing distributors generally to require distributors to assure us that they would endeavor to take the volume set up in that sales potential for their territory as a condition for executing their distributor's sales agreements with them."

That exhibit 23 was not intended by the parties to be a mere estimate of sales potential of the territory involved appears from the fact that an instrument set forth in the record as exhibit 45 very clearly was prepared for that purpose.

The words used in exhibit 23 disclose the intent of the parties. Its language is clear and unambiguous. As said by Mr. Justice BOYLES speaking for the Court in *Michigan Chandelier Co.* v. *Morse,* 297 Mich. 41, 49:

"We must look for the intent of the parties in the words used in the instrument. This Court does not have the right to make a different contract for the

parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning.''

To the same effect see *Galperin v. Michelson,* 301 Mich. 491. Exhibit 23 gives expression to a clear and unmistakable intent on the part of plaintiffs to order, and on the part of the defendants to accept the order for, 18,000 Scooter Bikes. Its execution resulted in a binding contract.

It will be observed that exhibit 23 does not specify the price of either vehicle. The plaintiffs claim and a reading of the entire record convinces us of the existence of an oral agreement that the price was to be $9 per vehicle, which defendants represented as meeting with the approval of the Detroit office of price administration, or such lesser figure as might thereafter be established as the ceiling price by the OPA regional office in Cleveland, Toledo or Cincinnati. The agreement is not void under the statute of frauds,* as contended by defendants, because of its failure to specify the price in writing, in view of a letter written by defendants on September 30, 1945, and sent to the plaintiffs, a portion of which reads as follows:

''The OPA certification as to jobber and dealer discounts has been received and photostatic copies of this certification will be mailed to our distributors within the next week. In this connection, the OPA has not set a retail ceiling and have merely OK'd $9.40 ceiling to distributors and jobbers and a $12.80 ceiling to the retail dealer. The $9 price which we quoted you still stands. Arrangements has been made for the same set up as regard to the Scooter Bike and we should have this certification about the 15th of October.''

---

* 2 Comp. Laws 1929 § 9443, Stat. Ann. § 19.244.—Reporter.

While this letter clearly indicates that at that time final OPA certification had not yet been received on the Scooter Bike, it reveals with equal clarity that the defendants had agreed on $9 as the price on both vehicles, subject to final OPA approval. Such arrangement is not, as urged by defendants, violative of the Federal emergency price control act,* but, on the contrary, evidences an intent to abide by it.

Defendants rely on the provision in the distributor's sales agreement to the effect that defendants shall not be liable for loss or damages sustained by plaintiffs in consequence of failure or delay in deliveries where due to acts of God or causes not within the control of defendants, contending that this provision excuses delivery because the OPA established a ceiling price at less than cost of manufacture. While this fact might render performance costly to defendants, it does not render it impossible. Defendants have no right to visit their misfortune in that regard upon plaintiffs. *Dewey* v. *Union School District of the City of Alpena,* 43 Mich. 480 (38 Am. Rep. 206). That performance would occasion a loss to defendants affords them no defense under the contract.

The proofs establish that plaintiffs had taken orders from dealers for over 2,300 Scooter Bikes at prices representing profits to plaintiffs ranging from $3 to $3.50 per unit. Plaintiff Sheldon testified that many of these represented sample orders and, had delivery been made and the product been found satisfactory by the dealers, promises from them of further orders assured total sales in excess of 15,000 Scooter Bikes before Christmas of 1945, at a like profit per unit. Plaintiff Sheldon testified that the defendants understood that plaintiffs' or-

---

* See 50 USCA App. § 901 *et seq.*—Reporter.

ders were to be shipped seasonably for the 1945 Christmas trade and that Scooter Bikes were not obtainable by plaintiffs from sources other than the defendants. Under such circumstances, plaintiffs' expenditures incurred in developing their territory and taking orders for Scooter Bikes are recoverable. *Thorn* v. *Morgan & Whateley Co.,* 135 Mich. 51; *Harrow Spring Co.* v. *Whipple Harrow Co.,* 90 Mich. 147 (30 Am. St. Rep. 421). The trial court concluded that half of the $20,283.27 expended by plaintiffs to develop their territory, as required by the distributor's sales agreement, should properly be allocated to the Irish Mail and half to the Scooter Bike. With this we are in accord. We think the record amply supports a decree for damages for plaintiffs in the amount of $10,000.

The distributor's sales agreement expressly provides for its termination by defendants on the giving of 90 days' notice. Such notice was contained in defendants' cross bill praying for a decree confirming such termination filed May 17, 1946. Consequently, the trial court was in error in permanently restraining defendants from selling Scooter Bikes in the territory allotted to plaintiffs.

A decree may enter in this Court modifying the decree of the trial court in accord herewith. Costs in this Court are awarded to neither party inasmuch as neither has fully prevailed on the appeal.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.