**RICKER et al. v. UNITED STATES.**
No. 49516.

United States Court of Claims
Oct. 6, 1953.

Harold C. Faulkner, San Francisco, Cal., Melvin, Faulkner, Sheehan & Wiseman, San Francisco, Cal., on the brief, for plaintiffs.

John B. Miller, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., LeRoy Southmayd, Jr., Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiffs sue to recover just compensation for the requisitioning and taking by defendant of the hull of the former battleship Oregon on April 19, 1944. Plaintiffs contend that the hull of the Oregon was marketable by them for use as an unpropelled barge or vessel; that its fair value for that purpose was $150,000 at the time it was taken, and asks judgment in that amount plus interest for delay in payment. There is no dispute as to the Government's liability for just compensation. The defendant offered plaintiffs $11,270.80 for the hull, and the dispute here is as to the amount, if any, due plaintiffs in excess of that sum.

Plaintiffs acquired ownership of the ship on January 23, 1943, when they purchased her from the defendant upon the acceptance of their bid of $35,000. The Government's disposal of the Oregon for scrapping, following its service to the country through two wars and its many years of use by the State of Oregon as a historical museum, resulted from a directive of the President on October 26, 1942, authorizing the Navy Department to "turn the U. S. S. Oregon over to the War Production Board for *reduction to scrap*." [Italics supplied.]

The contract of sale to plaintiffs read in part as follows:

"* * * If awarded to me/us, the vessel bid on will be *scrapped* at beyond the limits of the City of Portland and out of Oregon if possible. *Scrapping* will be completed within six months from date of delivery of the vessel by the Government. * * *

"It is hereby agreed that all classifications of *salvage material* and of *scrap material* shall be made and designated by this bidder and all such classifications shall be final." [Italics supplied.]

Plaintiffs paid the full purchase price, and after the removal of the foremast and topmast, which were given to the Battleship Oregon Commission as a memorial to the ship, possession was given to the plaintiffs. They leased the docking facilities at the Port of Kalama, Washington, where after making necessary repairs to the dock site and installing the needed machinery and equipment, they carried on their salvage and scrapping operations on the Oregon until approximately two months prior to the defendant's requisitioning of the hull of the vessel in April 1944.

Early in their scrapping operations, the plaintiffs decided, without consulting defendant, to salvage the hull for its possible use as an unpropelled vessel or barge. Their dismantling operations were conducted with such purpose in mind. All engines, boilers, pumps, pipes, generators, machinery and like equipment, were removed from the hold and the entire superstructure including guns and turrets, down to the top or weather deck were stripped off. Plaintiffs received the sum of $193,620.95 from the sale of these materials.

On March 27, 1944, a ship broker, acting on behalf of the plaintiffs, informed the War Shipping Administration of the existence of the Oregon hull, suggesting that it could be put to excellent use as an unpropelled barge or vessel, and that a price would be quoted on request.

By telegram of April 7, 1944, plaintiffs were advised that the War Shipping Administrator "has determined to and does hereby requisition title to and possession of the ex-battleship Oregon pursuant to Section 902 of the Merchant Marine Act of 1936, as amended [46 U.S.C.A. § 1242]." The requisitioning was effective on April 19, 1944.

Defendant then proceeded to install seven cargo hatches in the main deck, fit the vessel with light and storage batteries plus the making of various other repairs, all at a cost of $6,952.79. The hull was then towed to Guam by the Navy, where it was at the time of the trial of this case.

On April 13, 1948, the United States Maritime Commission having succeeded to all functions of the War Shipping Administration, offered to the plaintiffs $11,270.80 as the total compensation for the Oregon hull. This figure included the sum of $10,250 as the value of the hull and $1,020.80 as compensation for delay in payment. On June 4, 1948, plaintiffs rejected this award as not constituting just compensation. On June 24, 1949, however, plaintiffs accepted the sum of $8,453.10, which was 75 percent of the total amount offered and reserved their right to sue defendant for such further amount as they believed to be due.

The issues here in dispute arise from the difference between the parties on the question as to whether the Oregon hull at the time of the taking is to be valued as scrap material, as urged by the defendant, or as a usable unpropelled vessel or barge for sale in the shipping trade, as asserted by the plaintiffs.

The defendant, in urging scrap value as the standard, contends that the contract of sale to plaintiffs was a scrapping contract under which the plaintiffs were required to dismantle the ship and scrap the hull thereof. In stressing this view, the defendant, in addition to pointing to the language of the President's directive of October 26, 1942, and of the contract, supra, calls attention to the fact that the

disposal of the Oregon was handled in a special manner, that is, soliciting of bids on a selective basis, with the intention that no part of the vessel, as such, was to be used again. This, the defendant points out, resulted because of the rather unique status of the Oregon, particularly in the State of Oregon where it had been maintained by that State as a museum because of the historical interest attached to it. Defendant further stresses the fact that it was only because of the need for scrap metal brought about by the war conditions which prompted the President to authorize the scrapping of the Oregon. With such background in mind, defendant contends that under the contract of sale it was never intended or contemplated that the plaintiffs sell the hull of the vessel or put it to use as an unpropelled barge by private interests. Defendant maintains the Government's need for the hull in the prosecution of the war and the use made of the hull by the Government after requisitioning it, is immaterial to the issues here.

In contending that it is the market value at which they might have sold the hull for use as an unpropelled barge or vessel, upon which just compensation must be based, plaintiffs rely on two principal points: (1) That, under the provision of the contract above quoted, they were given full and final authority to designate what material was to be salvaged and what was to be scrapped. On the basis of that provision, they claim that they had the undeniable right to the hull as a salvageable item in itself and they here contend that the defendant is bound to pay just compensation based on that classification. (2) Plaintiffs contend that the Government's fitting of the hull for such a purpose after requisitioning it, supports their position as to their rights under the contract of sale of the ship to them.

In disposing of the Oregon the Navy Department at first resorted to the customary procedure, which included an appraisal and general advertisement in solicitation of bids. However, when all bids received were unacceptable because of qualifications attached to them, the Navy invited bids on a selective basis, forwarding to prospective bidders an "invitation to bid" accompanied by a letter which read in part as follows:

"Due to the fact that this ship is of inestimable sentimental value, the bidding and award of this ship for scrapping will not be handled under the usual circumstances. Your firm is one of the selected group of bidders who have been invited to bid upon the wrecking of the ship."

Plaintiff's bid of $35,000 in response to this invitation was accepted, and they were notified in part as follows:

"Approval for the sale of the Oregon to your partnership for the purpose of scrapping has been granted by the President of the United States."

■■ Despite these indications that it was clearly apparent to every one that the Navy intended that the Oregon be completely scrapped, plaintiffs insist that they were entitled under the contract provision, referred to above, to treat the hull of the ship as salvage and to place the hull on the market as an unpropelled barge. In our opinion the defendant is correct in its contention that under the terms of the contract, so far as plaintiffs were concerned, the hull of the ship was to be reduced to scrap. The greater weight of the evidence shows, and we have found that in the trade of scrapping and dismantling ships, the term "salvage material" is commonly used to refer to machinery and other fixtures which can be used as separate units when removed from the ship, and that such term does not mean the entire hull of a vessel. Finding 4. In view of the facts and circumstances under which the Oregon was disposed of for scrapping, we think it is clear that under the provision of the contract relating to salvage material and scrap material, plaintiffs were given a free hand in determining which of these equipment and fixture items might be salvaged or scrapped, but it did not entitle them to classify the hull in its en-

tirety as a salvageable item for sale in the market as a barge.

Plaintiffs objected to the admission of this testimony as to the meaning of the term "salvage material" in the trade or business of scrapping and dismantling ships, on the grounds that the contract provision was clear and unambiguous and no extrinsic evidence was needed. In our opinion the objection of plaintiffs is not well taken. In order to introduce evidence of a custom or usage it is not necessary that an ambiguity be shown to exist. On the principle that it is the intention of the parties which is to prevail, the language of a contract is to be given effect according to its trade meaning notwithstanding that its meaning on a casual reading may be unambiguous. Alabama Chemical Co. v. International Agricultural Corp., 5 Cir., 35 F.2d 907, 909; Hurst v. W. J. Lake Co., 141 Or. 306, 16 P.2d 627, 89 A.L.R. 1222. Such a meaning is incorporated into the contract by implication. Robinson v. United States, 13 Wall. 363, 366, 20 L. Ed. 653; Murphy v. Warner Bros. Pictures, Inc., 9 Cir., 112 F.2d 746, 748.

The use which the Government made of the hull after the requisitioning is, in our opinion, immaterial since the rights of the plaintiffs in respect to the Oregon were established under the contract of sale. The requirements of the Fifth Amendment are that the owner shall receive the value of what he loses and not what the taker may have gained. United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 81, 33 S.Ct. 667, 57 L.Ed. 1063. We hold, therefore, that under the contract of sale of January 23, 1943, what the plaintiffs lost was not a barge or an unpropelled vessel but the opportunity to dismantle and scrap the hull of the Oregon and dispose of its various segments as either scrap or salvage items.

We come next to the determination of the value to be placed on the hull as scrap. Plaintiffs claim $148,137.52 represents the profit which they would have derived if they had been permitted to dismantle the hull and reduce it to scrap. Defendant contends that $15,000 represents the value of the hull.

When determining what is just compensation fair market value must be looked to in the first instance, and where such a value is shown to exist it is to be applied. United States v. John J. Felin & Co., 334 U.S. 624, 629, 68 S.Ct. 1238, 92 L.Ed. 1614. The value of $15,000 for the hull, for scrapping purposes, is based on the testimony of two witnesses for the Government. Mr. Schwartz, who since 1922 had been engaged in the dismantling of ships on the West Coast, set the value of the Oregon hull in April 1944, for scrapping purposes, at $3.00 per long ton or slightly more, and on the basis of approximately 4,000 tons set its market value between $12,000 and $15,000. Mr. Sturm, Chief Ship Appraiser, U. S. Maritime Administration, testified in connection with a prepared study he had made of the sales of eight ships by the Government to the highest bidders during the 1943–44 period for scrapping on the West Coast. From these sales he arrived at an average price of $3.93 per long ton which, when applied to the 3,-616 tons which he found to be the weight of recoverable metals in the Oregon hull, amounts to $14,210.88. Finding 13. It is evident that these witnesses did not take into consideration the favorable condition the plaintiffs were in as to the facilities they had for use in scrapping the hull of the Oregon, and the nominal expense which, at the time of the requisition, would ordinarily have been directly chargeable to the cost of scrapping.

Plaintiffs' evidence in support of their claimed valuation of $148,137.52, consisted of the varying testimony of several witnesses as to what each believed could have been obtained for the scrap and salvage material in the hull, minus the dismantling costs.

This evidence as to receipts was, as the Commissioner has found, highly conjectural and speculative in many respects. However, the evidence of record shows that the plaintiffs were in a very

favorable situation, at the time the hull was taken on April 19, 1944, with respect to the facilities which they then had available for use in carrying on the wrecking operations, and with respect to the over-all profits which they would earn from the sale of the scrap material. See Finding 6. Just compensation to plaintiffs must, as we have said, be determined on the basis of the value of the property to plaintiffs at time of requisition, that is, what they lost by reason of the taking.

 Upon a careful study of the evidence submitted by both parties, and after a careful study of plaintiffs' exceptions and arguments in the light of all the facts and circumstances disclosed by the record, we are of the opinion that the fair and reasonable value of the hull was $25,000 at the date on which it was requisitioned.

We, therefore, hold that for scrapping purposes the market value of the Oregon hull in April 1944 was $25,000, and plaintiffs are entitled to judgment for that amount less the $8,453.10 already received. Finding 18. Plaintiffs have asked that the interest, to which they are entitled as part of just compensation, be permitted to run on the full value from April 19, 1944, the date of the taking, until June 24, 1949, the date when they accepted 75 percent of the April 13, 1948, award. The date, however, for the termination of interest on the full value is the date of the award. Companhia Uniao Fabril, Ltda. v. United States, 118 Ct.Cl. 451, 499.

Judgment will be entered for plaintiffs in the sum of $16,546.90, with an additional amount measured by interest at 4 percent per annum on $25,000 from April 19, 1944, to April 13, 1948, and an additional amount measured by interest at the same rate on $16,546.90 from April 13, 1948, to date of payment, all interest being allowed not as interest but as part of just compensation.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

**SOUTHEASTERN OIL FLORIDA, Inc. v. UNITED STATES.**

**No. 49518.**

United States Court of Claims.
Sept. 30, 1953.

