**EXCHANGE LEMON PRODUCTS COMPANY, a corporation, Appellant,**

v.

**The HOME INSURANCE COMPANY,**
Appellee.

**No. 14657.**

United States Court of Appeals
Ninth Circuit.

June 26, 1956.

Clayson, Stark & Rothrock, Donald D. Stark, Corona, Cal., for appellant.

Thomas P. Menzies, Harold L. Watt, James O. White, Jr., Los Angeles, Cal., for appellee.

Before HEALY, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

In the Kansas City floods of July, 1951, the appellant, Exchange Lemon, lost $162,000 worth of lemon products, principally lemon juice concentrate contained in barrels. There was no salvage on the commodities which were on the floors of the Crooks Terminal Warehouse in Kansas City, Missouri, when the rising waters of the river enveloped the warehouse.

The products were "earmarked" for the Puritan Company of America of Chicago, Illinois, but Exchange Lemon (a part of the large California organization popularly known as Sunkist) did not yet have orders for the purchase of any part of them. The goods were being held awaiting sale. Title was still with Exchange Lemon or its bailors (lemon producers) for whom, it is agreed, it had an insurable interest.

The goods had been shipped about eight months previous to the flood from Corona, California. American freight tariffs permit unloading en route and processing or holding of goods for varying periods of time at intermediate points which are not the ultimate destination. Perhaps, at the time of intermediate unloading the ultimate destination may not be known. If known, it has not been finally designated. The financial purpose recognized by the railway tariffs is the granting of a through rate which is cheaper than the sum total of the rates of point to point. The reason for the early preshipment here in advance of

marketing was to move the products from California to the Midwest when freight cars were readily available and to have the goods near the market when they would probably be sold in the summer of 1951.

To secure the through freight rate during the holding period, the goods must be registered with a designated freight association. While the shipments involved here were held at Kansas City, the intermediate storage point, they were registered as "transit freight" on the books of the Western Weighing and Inspection Bureau, the proper agency.

During the actual transportation of the goods from Corona to Kansas City or from Kansas City to the ultimate destination it would be admitted that if the freight cars containing the shipments had been swept into the river the loss would been covered by a "Transportation Policy" issued to Exchange Lemon, a citizen of California, by the appellee, the Home Insurance Company, a citizen of New York. The cause of the loss qualifies under the policy, but after the loss occurred a dispute arose between the insured and the insurer as to whether at the time the lemon products were held in Kansas City in the warehouse the insurance was in effect or whether the coverage was suspended while in the intermediate warehouse.

To oversimplify, it may be said the insured grounded its claim on the proposition that the goods were insured continuously to ultimate destination and final delivery. The insurer replied, "No, you weren't covered at the time because the goods were 'stored.' They were not en route anywhere and were not immediately about to go anywhere."

The issues between the parties whirl around a clause in Home's policy issued to Exchange Lemon reading as follows:

"This policy covers while the insured property is in due course of transit on any truck, trailer, railroad car, or other conveyance, whether such vehicles are owned by Assured or not. This policy also covers while on docks, wharves, piers, bulkheads, in depots, warehouses, stations and/or on platforms, but only while in due course of transit and not if such property is in storage."

The dispute having arisen as to the meaning of the contract, Home filed this diversity suit to obtain a declaratory construction of the insurance policy, with particular reference to the above quoted "in transit" clause. Exchange Lemon counterclaimed for its loss, the amount of which is agreed. Exchange Lemon requested a jury trial.

A pre-trail order was formulated. It was supplemented in advance of trial by a written offer of proof by Exchange Lemon.

The position then and now of Home is that the instrument must be construed from its four corners and in favor of Home so as to exclude coverage at the time of the loss. The position of Exchange Lemon essentially was that "in due course of transit" has a trade meaning which includes intermediate holding in a warehouse as distinguished from pre-shipment and post-shipment warehousing that would support coverage here; that the company agent who wrote the policy understood this meaning and had authority to bind the company, and that under the circumstances of such meaning of "in due course of transit" the goods were not in storage.

In advance of trial with the pre-trial order and offer of proof of Exchange Lemon before him, the district judge ruled that parol evidence was not admissible and that the contract should be construed in favor of Home. He rendered a memorandum decision which adequately qualifies as findings of fact and as conclusions of law. In this posture of the case, he entered judgment on the claim and the counterclaim for the plaintiff, Home, without summoning the jury. If his ruling that no evidence should be received aliunde the express terms of the contract is correct, then both parties would agree no jury was needed and the calling of a jury would be useless and, moreover, properly avoided.

But Exchange Lemon still believes its evidence should have been received. Thus, this appeal.

While we arrive at the same result, we are inclined to a different view from that taken by the trial court. It is this: Possibly parol evidence should be received as to the meaning of "in due course of transit." The parties were working either in the transportation business or so close to it that the court ought to know what "in the due course of transit" means in the transportation business. We would not deny the privilege to the parties because neither ran a railroad or a truck line, and we shall assume that this intermediate storage in the transportation trade would be included ordinarily within "in due course of transit," just as plaintiff's witnesses claimed. Certainly the words have the benchmark of someone's "shop talk" and the most obvious trade is the transportation trade.

But we do not subscribe to the belief that "storage" has any marks on it indicating that trade usage should be invited to amplify it.[1] Bluntly, storage is storage. The full limits of the term "storage" need not be explored. We are sure it includes goods in a warehouse held awaiting reshipment under in-transit privileges, especially where there are no adjectives qualifying it.[2] Here, the only orders in effect on the goods at the time of loss were "store them." Both parties would concede that in railroad terms the goods were "stored in transit," or they were subject to "in transit storage."

Bearing in mind that words are to be given their natural meaning, that all are presumed to mean something and are to be given effect if possible, and that the presumption is against conflicts in terminology,[3] we are disposed to say that "storage" was a limitation on what otherwise might be the result if we were solely concerned with "in due course of transit."

We should not try to find a contradiction and should resolve any doubt against it. Ordinarily, more justice is done by studying the tracks made by the parties across their documents, rather than permitting a remark over them with oral testimony which so often is really a case of "I would have thought if I had had a thought," although parties in their honest enthusiasm for their cause do not so recognize it.

We think the appellant here is not looking at the whole before dissecting it— looking too hard at the single words and not the sentence. We do not substitute the word "but" for the word "and." However, accepting appellant's view that "in due course of transit" includes in-transit storage,[4] we believe "in due course of transit and not if such property is in storage" means that storage is a qualification on "in due course of transit" rather than a contradiction. Stated another way, our construction is that for the insurance to be effective the position of the goods had to meet two conditions: 1. They had to be "in due course of transit." (They probably were.) 2. They must not be in storage without effective orders to ship. (The situation of the goods failed to meet this second condition.)[5]

If we have failed to attain the "true meaning" of what the parties meant to

---

1. Exchange Lemon made no offer of proof as to the trade meaning of storage. And on such a common word, we doubt if any should be received; at least not in the circumstances of this case.
2. Webster defines storage as "1. Act of storing or state of being stored; spec., the safekeeping of goods in a warehouse or other depository. 2. Space or a place for the safekeeping of goods," etc.
   See Webster's New International Dictionary, 2nd Ed.
3. See West's Annotated California Civil

Code, § 1641, as follows: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."
   The insurance contract was made in California. Its law is applicable.
4. That is to say, in accordance with appellant's witnesses' testimony as recorded in the offer of proof.
5. One might ask, "Does this interpretation of this court reduce the policy's coverage to just the time the goods were 'rolling'

say either party had it within his power at the outset to write the language above and beyond argument. Home is an expert in the insurance field. Exchange Lemon is an expert in shipping and marketing lemon juice. A reversal would not be unfair to Home because it did use awkward language, but our best judgment is that the policy, taken as a whole, was never intended to cover the risk of rising waters in the intermediate storage warehouse.

Exchange Lemon made no effort (we do not suggest that it could have succeeded) to reform the contract as not having expressed the intention of the parties. And we cannot say that the language here is so clumsy that the rule of interpretation to construe language against him who wrote it comes into play.

Judgment affirmed.

on a common carrier's equipment?" The answer would be "no." Anything beyond the express facts of the case is dicta, but we would assume on a specific shipment the coverage would last until the unloading of the whole shipment at the intermediate storage point was completed and the goods were in repose. Then again our interpretation would at some moment in time prior to completion of the entire reloading of the specific goods restore the coverage. Perhaps at the moment Exchange Lemon dispatched an order to reship from intermediate storage, the goods affected by the reshipment order would be covered.