**BUONO SALES, INC., a corporation of the State of New Jersey, Plaintiff,**

v.

**CHRYSLER MOTORS CORPORATION, a corporation of the State of Delaware, and Chrysler Corporation, a corporation of the State of Delaware, Defendants.**

Civ. A. No. 170–62.

United States District Court
D. New Jersey.
March 25, 1965.

**840**

Reussille, Cornwell, Mausner & Carotenuto, by Samuel Carotenuto and John A. Flood, Jr., Red Bank, N. J., for plaintiff.

Pitney, Hardin & Kipp, by Frank C. O'Brien, Newark, N. J., and Keith Jenkins, Detroit, Mich., for defendants.

AUGELLI, District Judge.

This action was tried to the Court, sitting without a jury, on the issues of liability under the first and fourth counts of the complaint, which allege, respectively, breach of contract, and tortious interference with business and prospective economic advantage. Counts two, three and five have been abandoned; and it has been stipulated that if the Court should make a finding of no liability on count one of the complaint, the remaining count six, based on the Automobile Dealers' Day in Court Act, 15 U.S.C.A. § 1221 et seq., would also be abandoned.

Plaintiff Buono Sales, Inc., is an automobile dealer located in Hawthorne, New Jersey. Defendant Chrysler Corporation is in the business of manufacturing automobiles. Defendant Chrysler Motors Corporation is a wholly owned subsidiary of Chrysler Corporation, and is engaged in the business of selling to dealers automobiles manufactured by the parent corporation. It has been stipulated that for the purposes of this action, "the separate corporate entities of the two defendants are to be disregarded and that any acts of the defendant Chrysler Corporation shall be deemed to be the acts of the defendant Chrysler Motors Corporation." In view of this stipulation, and unless otherwise stated, the defendants, and either

of them, will hereinafter be referred to as "Chrysler".

Jurisdiction is based on diversity of citizenship and allegation of the requisite amount in controversy, 28 U.S.C.A. § 1332. In addition, count six is brought under 15 U.S.C.A. § 1222.

From 1935 to 1959, plaintiff was a dealer for the DeSoto and Plymouth automobiles manufactured and sold by Chrysler. In 1959, plaintiff also became a dealer for the Valiant automobile, which was newly introduced by Chrysler in that year. On November 18, 1960, Chrysler discontinued production of the DeSoto. Thereafter, plaintiff continued as a Plymouth and Valiant dealer, and at the present time still operates as such.

The discontinuance of the DeSoto automobile on November 18, 1960, was announced by Chrysler on that date to all of its more than 1600 DeSoto dealers, including plaintiff. In the previous five year period, DeSoto sales had suffered an extremely serious decline due to the shift in public demand from the middle-priced car field, which included DeSoto, to the lower-priced and foreign car field. This loss was compounded by recurring rumors in the trade that production of the DeSoto would soon be discontinued. New car registrations of DeSotos in the United States dropped from 118,062 in 1955 to 23,063 in 1960. Plaintiff's own car sales of the DeSoto automobile, which in 1955 and 1956 had accounted for over 50% of its total new car sales, accounted for only 12 out of a total of 89 new cars sold by it in 1960. Under these circumstances, Chrysler would appear to have had sound bona fide business reasons for withdrawing the DeSoto from the market.

On November 18, 1960, plaintiff's business relationship with Chrysler was covered by a "DeSoto-Plymouth Direct Dealer Agreement" ("Agreement"), which had been in effect since June 10, 1957, and is still in force except as affected by the discontinuance of the DeSoto automobile. The Agreement provides that it is to be interpreted and construed according to the laws of the State

of Michigan. It is plaintiff's contention in count one of its complaint that Chrysler's discontinuance of the DeSoto automobile constituted a breach of this Agreement. Chrysler, on the other hand, in addition to other reasons advanced to justify its action, takes the position that the Agreement, by its very terms, gave it the right to discontinue the DeSoto, without notice, and without any obligation to plaintiff. The problem thus boils down to one of interpretation and construction of the Agreement in question.

It is hornbook law that the primary inquiry in cases involving the interpretation and construction of contracts is the ascertainment of the intention of the parties, and that such intention is to be gathered from the language used in the instrument. Thomas v. Jewell, 300 Mich. 556, 2 N.W.2d 501, 139 A.L.R. 1335 (1942); Sheldon-Seatz, Inc. v. Coles, 319 Mich. 401, 29 N.W.2d 832 (1947); Moulton v. Lobdell-Emery Mfg. Co., 322 Mich. 307, 33 N.W.2d 804 (1948). If the language employed is clear and unambiguous, the contract must be enforced as written, without reference to extrinsic facts. Harrington v. Inter-State Business Men's Accident Ass'n, 210 Mich. 327, 178 N.W. 19 (1920); Indemnity Insurance Co. of North America v. Geist, 270 Mich. 510, 259 N.W. 143 (1935). But if the terms of a written contract are uncertain, ambiguous, and susceptible of more than one interpretation, parol evidence may be introduced to resolve the issue. Weber v. Cole, 323 Mich. 485, 35 N.W.2d 396 (1949). See also Wigmore, Evidence, Vol. 9, Sec. 2556 (3rd Ed. 1940).

The Agreement in this case contains no express provision imposing any obligation on Chrysler to produce or continue the production of DeSoto automobiles. Indeed, it may be implied from para-

graph 10 of the Agreement,[1] that Chrysler would not be obligated to deliver any automobiles to plaintiff. The Agreement does provide, in paragraph 21, for a termination by either party upon the happening of certain events, but admittedly none of these events have taken place.

From a reading and consideration of the Agreement as a whole, it is apparent that a resolution of the issue under count one of the complaint revolves around the meaning to be ascribed to certain words used in paragraph 20 of the Agreement. That paragraph, in pertinent part, provides that:

"[Chrysler] at any time may discontinue any models, lines or body styles and may revise, change or modify their construction or classification. * * * [Chrysler] at any time may declare obsolete or discontinue any or all parts, accessories and other merchandise. [Chrysler] may act under this Paragraph 20 without notice and * * * without any obligation to [plaintiff] by reason of [plaintiff's] previous purchases."

Prior to the trial of this action, both sides moved for summary judgment under count one of the complaint, each contending that the Agreement was clear and unambiguous, that no further proofs were required, and that summary judgment should be awarded as a matter of law. The main target on the cross-motions for summary judgment was paragraph 20 of the Agreement, with particular reference to the meaning of the words "models", "lines", and "body styles".

Both motions were denied because the Court was of the opinion that the words "model", "lines", and "body styles" were somewhat ambiguous or at least subject to different interpretations

1. Paragraph 10, in part, provides: "All orders are subject to acceptance by [Chrysler], which may be in whole or in part. [Chrysler] will use its best efforts to fill accepted orders for DeSoto * * * passenger cars and DeSoto * * * passenger car parts and accessories; however, [Chrysler] will not be liable for delay or nondelivery of products ordered nor will anything in this agreement obligate [Chrysler] to deliver to [plaintiff] any particular number of new DeSoto * * * passenger cars."

in the context in which they were used. The cross-motions for summary judgment, in the Court's view, presented a factual issue as to the meaning of the quoted words in the automobile industry and in the Agreement. While it is true that the construction of written instruments belongs to the Court as a matter of law, it is nevertheless the function of the trier of the facts to consider evidence of the surrounding circumstances relating to the meaning of ambiguous words or words with a particular commercial meaning attached by usage. See Wigmore, Evidence, Sec. 2556, supra; Distillers Distributing Corp. v. Sherwood Distilling Co., 180 F.2d 800 (4 Cir. 1950); Ricker v. United States, 115 F.Supp. 193, 126 Ct.Cl. 460 (1953); Home Insurance Co. v. Exchange Lemon Products Co., 126 F.Supp. 856 (S.D.Calif. 1954), aff'd 235 F.2d 558; Fidelity Trust Co. v. American Surety Co. of New York, 268 F.2d 805 (3 Cir. 1959).

At the trial of the action, plaintiff rested its case on count one of the complaint after putting in evidence the Agreement, a telegram by Chrysler dated November 18, 1960 advising plaintiff of the discontinuance of the 1961 DeSoto, and Chrysler's letter of the same date stating reasons for the discontinuance. In addition to the foregoing, plaintiff relied on the briefs submitted in connection with its summary judgment motion. Chrysler, on its claimed right to discontinue production of the DeSoto automobile under paragraph 20 of the Agreement, introduced evidence bearing on the meaning intended by the language used in that paragraph.

There was testimony, from which the Court finds, that as used in the automobile industry, and as understood by the parties to the Agreement, the word "model" means and refers to automobiles identified by a particular year; that the word "line," though susceptible of more than one meaning, is generally used in the industry to designate a group

of automobiles sold under the same trade name, such as the Plymouth, Dodge, Valiant or DeSoto;[2] and that the term "body style" means and refers to a particular type of automobile, such as a two-door, four-door, hardtop or convertible. Accepting, as the Court does, these meanings and definitions of the quoted words, it is thus clear that Chrysler had the right, under paragraph 20 of the Agreement, to discontinue on November 18, 1960, the 1961 model of the DeSoto line which had been introduced in October, 1960, in two body styles.

The Court is also satisfied from a consideration of the entire Agreement, in light of the evidence adduced at the trial, that no contract in perpetuity was intended; that plaintiff, an automobile dealer of many years standing, was familiar with the ever changing conditions in the automobile market; that to plaintiff's knowledge it is not unusual, as consumer tastes and demands change, for manufacturers to cease production of a particular make of automobile; and that it was in contemplation of the parties that any automobile covered by the Agreement might be withdrawn from the market. Indeed, prior to 1935, plaintiff had been a dealer for various makes of automobiles, including Jewett, Gardiner, Elcar, Oakland and Pontiac, the first four of which have long since disappeared from the market.

Under all of the circumstances, the Court finds that Chrysler was justified, under paragraph 20 of the Agreement, in discontinuing production of the DeSoto automobile, and that no liability attached to it by reason of such action. It follows, and the Court so determines, that Chrysler is not liable to plaintiff for breach of the Agreement. This conclusion makes it unnecessary for the Court to consider other reasons advanced by Chrysler as to non-liability under count one of the complaint.

Chrysler must also prevail on count four of the complaint.

2. There was also marked in evidence a questionnaire completed by plaintiff in the course of business in which the De-Soto automobile was designated as a "line" by plaintiff.

In early 1961, a certain nine-panel brochure was mailed by the Dodge Division of Chrysler to owners of 1956, 1957, 1958 and 1959 DeSoto automobiles in plaintiff's sales locality.[3] The Brochure was essentially a promotional effort to increase the sale of the 1961 Dodge automobile, and was addressed specifically to the DeSoto owner, who was told on the front panel: "The Key To Your DeSoto Is The Key To The Best Deal You Can Ever Make!" Another panel of this same brochure consisted of a letter from the General Manager of the Dodge Division addressed: "Dear DeSoto Owner". In addition to urging the purchase of Dodge automobiles, the letter also contained a statement that the Dodge dealer "is best qualified to give your DeSoto the genuine factory-approved service it deserves."

It is plaintiff's contention that the mailing of this brochure constituted a tortious interference with its business and prospective economic advantage. At the time of the mailing, plaintiff was not a Dodge dealer, but its business did include the servicing of DeSoto automobiles. Thus, in effect, plaintiff's former DeSoto customers were being invited by Chrysler's Dodge Division to take their future business, both new car and service, to other dealers who sold Dodge automobiles.

The testimony established that in its automobile manufacturing operations, Chrysler is divided into a number of divisions, including the Dodge Division; and that the primary function of each division is to promote the sale of the car produced by it, in competition both with cars put out by other divisions of Chrysler, as well as with automobiles made by other companies. Thus, it is a recognized and accepted practice in the Chrysler complex for the different divisions, such as Dodge and Plymouth, as well as the individual dealers in such divisions, to compete with one another in the market place. In this instance, the management of Chrysler, in the exercise of its business judgment, determined that former DeSoto customers might be served by Dodge as well as by Plymouth dealers.

Plaintiff does not allege that the brochure was distributed maliciously, nor is any allegation made or proof submitted that the brochure was false in any respect as applied to plaintiff. The brochure contained no suggestion of fraud or misrepresentation, or of intimidation, obstruction, or molestation. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 591, 175 A. 62, 99 A.L.R. 1 (E. & A. 1934). Use of the term "best qualified" to describe the Dodge dealer's ability to service DeSotos was at most mere "puffing".

In the opinion of the Court, the brochure in question was a lawful method of competition. DeSoto automobiles were no longer being made. The primary purpose of the brochure was to promote the sale of Dodge cars to former purchasers of DeSotos. Plaintiff had no monopoly on the new car business of DeSoto owners. Such owners were obviously good prospects for solicitation by a Dodge, Ford, Chevrolet, or any other dealer, including plaintiff with his Plymouth line. The brochure of which plaintiff complains was prepared and distributed in furtherance of established Chrysler policy to assist its dealers in competing for business with all other dealers, whether such dealers sold Chrysler products or cars made by others.

Under these circumstances, the Court finds that in mailing the brochure in question, Chrysler did not commit an act so unjustifiable or unreasonable as to constitute a tortious interference with plaintiff's business and prospective economic advantage. See Van Horn v. Van Horn, 56 N.J.L. 318, 323, 28 A. 669 (E. & A. 1893); Brennan v. United Hatters, 73 N.J.L. 729, 744, 65 A. 165, 9 L.R.A., N.S., 254 (E. & A. 1906); Louis Kamm, Inc. v. Flink, supra, at pp. 586–591.

---

3. A similar brochure was also mailed at the same time by the Dodge Division of Chrysler to owners of Ford, Chevrolet, and American Motors automobiles located in the same area.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

Judgment will be entered in favor of both defendants, dismissing the complaint in its entirety. Counsel for defendants, on notice to counsel for plaintiff, will please submit an appropriate order.