WAUSAU UNDERWRITERS INSURANCE COMPANY v
AJAX PAVING INDUSTRIES, INC

Docket No. 236823. Submitted May 7, 2003, at Detroit. Decided May 27,
2003, at 9:10 A.M. Leave to appeal sought.

Wausau Underwriters Insurance Company brought an action in the
Oakland Circuit Court against Ajax Paving Industries, Inc.,
seeking contractual indemnification from the defendant, as subrogee
of the Michigan Department of Transportation (MDOT). The defendant had
purchased owners and contractors protective (OCP) liability insur-
ance from the plaintiff and named MDOT as the insured, as required
under a construction contract between the defendant and MDOT.
Two individuals had filed a lawsuit against MDOT seeking damages
for injuries allegedly sustained during the construction project.
American International Group, Incorporated (AIG), the defendant's
comprehensive liability insurer, had defended MDOT, negotiated a
settlement, and required the plaintiff to pay its OCP policy limits
before the defendant or the AIG would contribute to the settlement.
The plaintiff had paid under protest and brought this action. The
court, Steven N. Andrews, J., granted summary disposition in favor
of the defendant on the bases that the defendant had fulfilled its
contractual obligation to indemnify MDOT by purchasing the OCP pol-
icy and that the OCP policy provided primary coverage. The plaintiff
appealed.

The Court of Appeals *held*:

1. The OCP policy provided that the plaintiff agreed that its cover-
age was primary only with regard to any other insurance available
to MDOT. The plaintiff is not seeking contribution from any other
insurance available to MDOT, but, instead, is seeking indemnification
from the defendant from insurance available to the defendant as
the named insured. The trial court erred in relying on the "other
insurance" clause in the OCP policy.

2. The defendant was obligated by the construction contract to
save harmless and indemnify MDOT against all claims arising out of
the work. The defendant's procurement of insurance policies for
itself and an OCP policy for the benefit of MDOT did not discharge its
contractual duty or negate MDOT's corresponding contractual right
to indemnification. The plaintiff is MDOT's rightful subrogee.

3. The terms "indemnify" and "insure" are not legally equivalent.

4. The coverage of the OCP policy was not illusory, and the policy fulfilled its intended purpose.

Reversed and remanded.

*Harvey Kruse, P.C.* (by *Michael F. Schmidt* and *Christopher W. Ward*), for the plaintiff.

*Secrest, Wardle, Lynch, Hampton, Truex and Morley* (by *Timothy A. Bahorski* and *William D. Shailor*) for the defendant.

Before: MARKEY, P.J., and CAVANAGH and HOEKSTRA, JJ.

CAVANAGH, J. Plaintiff Wausau Underwriters Insurance Company appeals as of right from an order granting defendant Ajax Paving Industries, Inc.'s, motion for summary disposition under MCR 2.116(C)(10). We reverse and remand for further proceedings.

Under its contract for highway construction work with the Michigan Department of Transportation (MDOT), defendant was required to purchase owners and contractors protective (OCP) liability insurance. Defendant ultimately purchased an OCP policy from plaintiff for MDOT's benefit. Subsequently, two individuals who were allegedly injured during the construction project filed a lawsuit against MDOT. Defendant's comprehensive liability insurer, American International Group, Incorporated (AIG), provided MDOT's defense and negotiated a settlement. The AIG then required plaintiff to pay its OCP policy limits before defendant or the AIG would contribute to the settlement. Under protest, plaintiff paid its policy limits and commenced the instant action seeking contractual indemnification from defendant as MDOT's subro-

gee. Thereafter, defendant was granted summary disposition on the ground that defendant fulfilled its contractual obligation to indemnify MDOT by purchasing the OCP policy and that the policy provided primary coverage. Plaintiff appeals.

First, plaintiff claims that the trial court erred in failing to address whether the indemnification agreement in the construction contract between defendant and MDOT was enforceable. We disagree. This Court reviews de novo a trial court's grant of summary disposition. *Pinckney Community Schools v Continental Cas Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995). Here, the trial court implicitly held that the indemnification agreement was enforceable and that by purchasing the OCP policy from plaintiff, defendant indemnified MDOT and, thus, complied with that agreement. Consequently, plaintiff's argument is without merit.

Next, plaintiff argues that the trial court erred in concluding that plaintiff was not entitled to contractual indemnification by defendant as MDOT's subrogee. We agree.

The contract between MDOT and defendant provided as follows:

> *1.07.08 Damage Liability and Insurance.*—The Contractor shall save harmless and indemnify the State, the Commission, and the Department and its employees against all claims for damages to public or private property and for injuries to persons arising out of and during the progress and to the completion of the work.
>
> *a. Workmen's Compensation Insurance.*—The Contractor, prior to the execution of the contract, shall file a certification that the Contractor carries Workmen's Compensation Insurance.

*b. Bodily Injury and Property Damage.*—The Contractor, prior to execution of the contract, shall file with the Department copies of completed certificates of insurance, as evidence that the Contractor carries adequate insurance, satisfactory to the Director, to afford protection against all claims for damages to public or private property, and injuries to persons, arising out of and during the progress of the work, and to its completion and, where specified in the proposal, similar insurance to protect the owner of premises on or near which construction operations are to be performed.

*1. Bodily Injury and Property Damage Other Than Automobile.*—[This provision set forth minimum limits of property damage and bodily injury liability covering each contract.]

*2. Owners Protective Liability.*—Bodily injury and property damage protection shall be extended to the Department and the Commission . . . .

*3. Bodily Injury Liability and Property Damage Liability Automobiles.*—[This provision set forth minimum limits of property damage and bodily injury liability covering each contract.]

In accordance with subsection 1.07.08(b)(2) of the contract, defendant purchased an OCP policy from plaintiff that named MDOT as the insured and defendant as the designated contractor. The OCP policy provided that plaintiff would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy also provided that the contractor was responsible for the payment of all policy premiums and that "[i]f the insured has rights to recover all or part of any payment we have made under this Policy those rights are transferred to us." Whether plaintiff is entitled to reimbursement from defendant for payments made in set-

tlement of bodily injury claims filed against MDOT is the issue presented.

Plaintiff claims that it is entitled to reimbursement, by operation of the subrogation doctrine, as a consequence of the indemnification provision contained in the contract between MDOT and defendant. Defendant claims, and the trial court agreed, that defendant satisfied its contractual duty to indemnify MDOT by purchasing an OCP policy on MDOT's behalf. We agree with plaintiff—plaintiff, as subrogee, is entitled to reimbursement from defendant of settlement payments made on MDOT's behalf because of MDOT's contract with defendant.

A long-established rule of contract interpretation is that the intent of the parties is ascertained and enforced according to the plain language of the contract. *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 603-604; 576 NW2d 392 (1997). Clear, unambiguous, and definite contract language must be enforced as written and courts may not write a different contract for the parties or consider extrinsic evidence to determine the parties' intent. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998), quoting *Sheldon-Seatz, Inc v Coles*, 319 Mich 401, 406-407; 29 NW2d 832 (1947). A contract that is clear and unambiguous is construed as a matter of law. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996).

Here, we must first consider the contract between MDOT and defendant because any rights that plaintiff acquired with regard to defendant are derivative of MDOT's rights. See *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 135-136; 485 NW2d 695

(1992), quoting 16 Couch, Insurance, 2d (rev ed), § 61:37, pp 120-121. The contract mandated that defendant "save harmless and indemnify the State . . . against all claims . . . ." Consistent with the obvious intention to insulate MDOT from all potential liability, the contract required that defendant purchase worker's compensation insurance and bodily injury and property damage insurance. Three specific types of bodily injury and property damage insurance policies were mandated, including policies that provided insurance coverage for claims arising out of automobile usage and "other than automobile" claims, as well as claims against the owners. It is this third policy, the OCP insurance policy, that is at issue in this case.

OCP policies are typically purchased by a general contractor for the benefit of the project owner. See, generally, Galganski, *Owners and Contractors Protective Liability: An Insurance Tool in Construction*, 15-JAN Construction Law 8 (1995). Having such a policy in the project owner's name protects the owner from any delay in defending against a legal action instituted against it during the construction project. *Id.* Unless the contractor is a designated, named insured, the OCP policy does not provide insurance coverage for the contractor. Instead, the policy usually provides the owner with coverage for allegations of vicarious liability arising out of the contractor's construction activities and for allegations involving the owner's supervision of the construction activities. See *id.*

In this case, the trial court partially premised its dismissal of plaintiff's contractual indemnification claim on the "other insurance" clause of the OCP policy, which provided:

The insurance afforded by this policy is primary insurance and we will not seek contribution from any other insurance available to you unless the other insurance is provided by a "contractor" other than the designated "contractor" for the same operation and job location designated in the Declarations.

The trial court reasoned that "by the policy terms, [plaintiff] agreed that its policy's coverage would be primary, and specifically waived any right for recovery against any other insurance coverage purchased for MDOT's benefit by [defendant]." However, by the plain language of the provision, plaintiff only agreed that its coverage was primary with regard to "any other insurance available to [MDOT]." The only insurance that could be "available" to MDOT would be insurance policies in which MDOT was a named insured, e.g., a commercial general liability [CGL] policy. Here, plaintiff is not seeking contribution from any other insurance available to MDOT; rather, it is seeking indemnification from defendant and, in effect, insurance available to defendant as a named insured. Therefore, we reject the trial court's reliance on the "other insurance" clause as an appropriate ground for dismissal of plaintiff's claim.

The trial court also premised its dismissal of plaintiff's action on the ground that defendant fulfilled its contractual duty to indemnify MDOT by purchasing the OCP policy as required by their contract. We reject the contention that a contractual obligation to procure insurance effectively extinguishes an express contractual right to indemnification contained within the same contract. The clear and unequivocal terms of the contract mandated that defendant "save harmless and indemnify the State . . . against all claims . . . ." It

did not condition or otherwise circumscribe MDOT's right to be free from liability and entitlement to reimbursement of any loss on defendant's purchase of insurance. That the contract also contained provisions obligating defendant to obtain specific insurance policies as security against the potential liability does not fulfill the other explicit contractual obligation to indemnify the state "against all claims . . . ." If the parties had intended to waive claims against each other if insurance covered any losses, they could have included such a waiver clause within the contract. Similarly, the parties could have incorporated a subrogation waiver clause in the contract or requested a subrogation waiver endorsement in the OCP policy. We will not rewrite the parties' contract under the guise of interpretation. See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991).

Defendant posits other arguments on appeal in support of the trial court's holding. First, defendant claims that the terms "indemnify" and "insure" are legally equivalent and, thus, by securing insurance in MDOT's name, defendant fulfilled its contractual obligation to indemnify MDOT. We disagree that the terms "insure" and "indemnify" are legally equivalent; for example, an insurance policy may not cover the entire loss but when one promises to indemnify another, the promise is to reimburse for the entire loss. See, e.g., Black's Law Dictionary (7th ed).

Similarly we reject defendant's argument that permitting MDOT to seek indemnity for the loss that was covered by the OCP policy causes the coverage that defendant purchased to be rendered illusory because defendant "received nothing in return for it [sic] payment of the premium." Defendant was required to

purchase the policy under the construction contract and it was for MDOT's benefit—the named insured—not defendant's benefit. The award of the construction contract, which was conditioned in part on defendant procuring the policy, was a result. Defendant's claim that it expected to otherwise benefit from MDOT's OCP policy is unsupported by legal authority or its contract with MDOT. Further, obviously the OCP policy coverage was not illusory but fulfilled its intended purpose to protect MDOT from being embroiled in a protracted litigation since its policy limits were paid to settle the third-party claims filed against MDOT, while defendant and its insurance company refused to pay the settlement. In addition, the premium for MDOT's OCP policy was $12,075 and the premium for defendant's CGL policy was $185,750. This large disparity in premiums tends to illustrate that the CGL policy was intended to cover the majority of the risk associated with the construction project and that indemnification was contemplated. See, e.g., *North Star Reinsurance Corp v Continental Ins Co*, 82 NY2d 281, 292; 624 NE2d 647 (1993).

Defendant's reliance on *Kehoe v Commonwealth Edison Co*, 296 Ill App 3d 584; 694 NE2d 1119 (1998), is also misplaced. In that case, the issue was whether the purchase of insurance for the owner by a contractor, pursuant to a construction contract, barred the owner's contribution action against the contractor. After review of the contract, the court determined that such claim was barred because the contract showed "the parties' intent to provide for potential losses first by the mechanism of insurance and then by indemnification." *Id.* at 591. However, the construction contract at issue there contained the follow-

ing provision: " 'to the extent the Owner is compensated by insurance as to which the Owner's insurance carrier's rights of subrogation have been waived or are required to be waived in accordance with the Contract,' the contractor is not required to provide indemnification." *Id.* No comparable provision was included in the construction contract between MDOT and defendant. Accordingly, we reject the trial court's analogous "hierarchy of responsibility" rationale in support of its holding, i.e., the OCP policy provided MDOT's primary protection, followed by defendant's CGL policy, and then, if necessary, indemnification.

In sum, pursuant to their construction contract, defendant was obligated to "save harmless and indemnify" MDOT against all claims "arising out of and during the progress and to the completion of the work." Defendant's procurement of insurance policies for itself and an OCP policy for MDOT's benefit did not discharge its contractual duty or negate MDOT's corresponding contractual right to indemnification. The contract did not include any applicable waiver provisions but, instead, its clear and unambiguous language evidences an intent to insulate MDOT from liability. It is undisputed that plaintiff is MDOT's rightful subrogee; therefore, the trial court erred in summarily dismissing its action against defendant.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.